IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| TONY E. DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:14CV54 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Tony Davis ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claims for Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.   PROCEDURAL HISTORY

Plaintiff filed his application for Disability Insurance Benefits ("DIB") on June 17, 2010 and his application for Supplemental Security Income Benefits ("SSI") on June 18, 2010, alleging a disability onset date of June 9, 2010. (Tr. at 333-49.)[1] His applications were

---

[1] Transcript citations refer to the Sealed Administrative Transcript of Record [Doc. #8].

denied initially (Tr. at 225-54, 257-64) and upon reconsideration (Tr. at 255-56, 270-88). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 289-90.) Plaintiff, along with his attorney, attended the subsequent hearing on July 20, 2012. (Tr. at 19.) The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 32), and, on November 25, 2013, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 6-11).

## II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted).

"If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal brackets omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength

4

claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since his amended alleged onset date. Plaintiff therefore met his burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments: degenerative disc disease of the cervical and lumbar spine, sleep apnea with CPAP, peripheral neuropathy, bradycardia with pacemaker implantation, borderline intellectual functioning, bipolar disorder, and history of substance abuse, currently in remission. (Tr. at 21.) The ALJ found at step three that none

---

limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

of these impairments met or equaled a disability listing. (Tr. at 22.) Therefore, the ALJ assessed Plaintiff's RFC and determined that he could perform

> light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant can perform push and pulling motions occasionally with the left lower extremity, never climb ladders, occasionally climb stairs and balance; and should avoid even moderate exposure to working around hazards. The claimant can understand, remember, and carry out short simple instructions two hours at a time, eight hours a day; he can work in a low-stress, non-production rate job, not in close proximity to coworkers, meaning the claimant cannot function as a member of a team, and he cannot perform his job in direct contact with the public, meaning that contact with the public is incidental and not a primary factor in the job.

(Tr. at 24.) Based on this determination, the ALJ found under step four of the analysis that Plaintiff could not return to any of his past relevant work. (Tr. at 30.) However, based on the vocational expert's testimony, the ALJ concluded at step five, that, given Plaintiff's age, education, work experience, and RFC, he could perform other jobs available in the national economy and therefore was not disabled. (Tr. at 31-32.)

Plaintiff now challenges the ALJ's decision in two respects. First, he alleges that, at step three, the ALJ failed to properly evaluate his spinal disorder under 20 C.F.R. Part 404, Subpt. P, Appendix I, § 1.04(A) (hereinafter "Listing 1.04(A)"). Second, Plaintiff contends that the ALJ "also erred by rejecting the medical opinion of Plaintiff's treating physician of many years, Dr. [Woodward] Burgert." (Pl.'s Br. [Doc. #12] at 6.) The Commissioner, in turn, urges that substantial evidence supports the ALJ's decision.

A.   Listing 1.04(A)

Plaintiff first claims that the ALJ did not properly evaluate his degenerative disc disease against Listing 1.04(A). To meet Listing 1.04(A), a plaintiff must first show that he

suffers from a spinal disorder, such as "herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, [or] vertebral fracture." 20 C.F.R. Part 404, Subpt. P, Appendix I, § 1.04. In addition, he must demonstrate that the above spinal condition results in "compromise of a nerve root (including the cauda equina) or the spinal cord." Id. Finally, he must show:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

Id.

In the present case, Plaintiff's documented degenerative disc disease clearly met the first of these requirements. However, the ALJ determined that Plaintiff "ambulates effectively and does not have the specific sensory, reflex, or muscle atrophy required to meet/equal any listing," including any part of Listing 1.04. (Tr. at 22.) In other words, Plaintiff failed to demonstrate that any of his nerve roots were compressed or compromised to the extent required by Listing 1.04(A).[4] The ALJ also noted that "no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment." (Id.)

---

[4] Plaintiff contends that the ALJ erred in referring to Plaintiff's ability to ambulate effectively, since that is a requirement of Listing 1.04(C), not Listing 1.04(A). However, as noted by Defendant, the ability to ambulate effectively supports the finding that Plaintiff did not have the requisite muscle weakness and sensory loss under 1.04(A). In addition, the inability to ambulate effectively indisputably is a requirement of Listing 1.04(C), and the ALJ was addressing this section of Listing 1.04 as well. See also Clausen v. Astrue, 5:13cv023, 2014 WL 901208 (W.D. Va. Mar. 7, 2014) (discussing the loss of function under 1.00(B)(2) generally, based on "the inability to ambulate effectively on a sustained basis . . . [that] must have lasted, or be expected to last, for at least 12 months").

Plaintiff now argues that the "mild to moderate central canal and mild right neuroforaminal narrowing" noted in his December 2010 CT scan qualify as "evidence of nerve root compression" sufficient to meet the listing. Plaintiff further claims that "the record contains numerous objective findings concerning not only neuroanatomical distribution of pain [in his] legs. . . , but also sensory and[/]or reflex reduction . . . , motor reduction . . . , and a positive SLR." (Pl.'s Br. at 5 (citing Tr. at 612, 652, 653, 655, 675, 784, 791, 793, 794, 800, 802-806, 811, 814-15, 828, 885-86).) However, Plaintiff points to no records indicating any limitation of motion of his spine, muscle atrophy, or any significant degree of muscle weakness.[5] Therefore, Plaintiff failed to demonstrate that he met *all* of the specified medical criteria to match a listing as required under the Act. See Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (specifying that "[a]n impairment that manifests only some of [the] criteria [of a listing], no matter how severely, does not qualify"); see also Hays v. Sullivan, 907 F.2d 1453, 1456-58 (4th Cir. 1990). Because the ALJ in the present case clearly considered whether Plaintiff's degenerative disc disease met or equaled the criteria for all parts of Listing 1.04 and discussed the medical evidence relevant to her finding throughout the decision (see Tr. at 22, 25-26), the Court concludes that substantial evidence supports her step three determination.

B.  Treating Physician Opinion

Plaintiff next argues that the ALJ failed to evaluate the opinion of Plaintiff's treating physician, Dr. Burgert, in accordance with 20 C.F.R. §§ 404.1527(c) and 416.927(c), better

---

[5] Plaintiff also cites to a positive straight-leg raising test (Tr. at 803). However, the record fails to designate whether the positive result was achieved in the sitting or supine position, and nothing indicates that positive results were achieved in both positions, as clearly required by Listing 1.04(A).

8

known as the "treating physician rule." The treating physician rule generally requires an ALJ to give controlling weight to the opinion of a treating source as to the nature and severity of a claimant's impairment, based on the ability of treating sources to

> provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) [which] may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). However, if a treating source's opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the case record," it is not entitled to controlling weight. See Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5; 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2); see also Craig, 76 F.3d at 590; Mastro, 270 F.3d at 178. Instead, the opinion must be evaluated and weighed using all of the factors provided in 20 C.F.R. § 416.927(c)(2)(i)-(c)(6) and § 404.1527(c)(2)(i)-(c)(6), including (1) the length of the treatment relationship, (2) the frequency of examination, (3) the nature and extent of the treatment relationship, (4) the supportability of the opinion, (5) the consistency of the opinion with the record, (6) whether the source is a specialist, and (7) any other factors that may support or contradict the opinion.

Where an ALJ does not give controlling weight to a treating source opinion, she must "give good reasons in [her] . . . decision for the weight" assigned, taking the above factors into account. 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). "This requires the ALJ to provide sufficient explanation for 'meaningful review' by the courts." Thompson v. Colvin, No. 1:09CV278, 2014 WL 185218, at *5 (M.D.N.C. Jan. 15, 2014) (quotations omitted); see

9

also SSR 96-2p (noting that the decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight").

Finally, regardless of whether an opinion by a treating physician is given controlling weight with respect to the nature and severity of a claimant's impairment, opinions by physicians regarding the ultimate issue of whether a plaintiff is disabled within the meaning of the Act are never accorded controlling weight because the decision on that issue is reserved for the Commissioner alone. 20 C.F.R. §§ 404.1527(d) and 416.927(d).

In the present case, Dr. Burgert opined in a June 4, 2012 treatment note that Plaintiff "warrants disability I believe with chronic lumbar radiculopathy and severe spinal stenosis causing him to walk with a cane and be unable to stand for lengthy periods." (Tr. at 885.) Dr. Burgert also noted that Plaintiff suffers from neck pain, "significant psych disease," and "syncopal episodes of unclear etiology," although he did not indicate that these impairments provided an additional basis for disability. (Id.)

The ALJ included Dr. Burgert's opinions in her decision. However, she stated that she:

> gives little weight to Dr. Burgert's conclusions and finds that they were not sufficiently functional or diagnostic in nature and did not adequately describe the claimant's abilities and limitations for specific work-related activities or duration. [The ALJ] also notes that treating records showed that the claimant's degenerative disk disease was not as severe as Dr. Burgert indicated. Although Dr. Burgert noted that the claimant used a cane, the physical examinations indicated that the claimant had 5/5 strength in the lower extremities, he had a steady gait, and there were no indications in the evidence of record that the claimant's use of a cane was prescribed.

10

(Tr. at 27.) In addition, the ALJ correctly noted that Dr. Burgert's opinion as to the ultimate issue of disability was not entitled to controlling weight, as it is a dispositive issue reserved to the Commissioner. (Tr. at 27 (citing 20 C.F.R. §§ 404.1527(d)(1) and 416.927(d)(1)).)

Plaintiff now argues that Dr. Burgert adequately addressed functionality by noting Plaintiff's limitations in standing and walking. (Pl.'s Br. at 7.) However, Dr. Burgert's observation that Plaintiff had begun using a cane and was "unable to stand for lengthy periods" is relatively general and undefined, and the ALJ reasonably concluded that this description was "not sufficiently functional or diagnostic in nature and did not adequately describe the claimant's abilities and limitations for specific work-related activities or duration."

Additionally, Plaintiff contends that Dr. Burgert's diagnoses are consistent with the medical record as a whole and that Plaintiff's own "continued complaints of severe pain in addition to neurological deficits" provide proof of the severity of his condition. (Id.) However, the ALJ did not challenge Dr. Burgert's diagnoses; in fact, she included both degenerative disc disease and peripheral neuropathy among Plaintiff's severe impairments at step two. (Tr. at 21.) She merely questioned the severity and limiting effects of those conditions. (Tr. at 27.) In particular, the ALJ found that, despite Plaintiff's ongoing complaints of leg weakness, his examinations consistently showed intact strength in his lower extremities and a steady gait. (Tr. at 27, 28.) Most significantly, the ALJ found Plaintiff's subjective complaints regarding the severity of his symptoms less than fully credible, and Plaintiff does not challenge that finding here. (Tr. at 28.) In short, Plaintiff's

"continued complaints of severe pain" fail to provide substantial evidence of disabling impairments in the face of the relatively mild objective findings throughout the record as a whole. Accordingly, the substantial evidence in this case supports the ALJ's treatment of Dr. Burgert's opinion.[6]

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Judgment Reversing the Commissioner [Doc. #11] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #13] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 14th day of July, 2015.

        /s/ Joi Elizabeth Peake
        United States Magistrate Judge

---

[6] Although not raised as a separate contention, Plaintiff also criticizes the ALJ's reliance on the opinion of Dr. Farley. However, as noted by Defendant, the ALJ did not cite Dr. Farley's opinion as a basis for giving Dr. Burgert's opinion little weight. Instead, the ALJ first evaluated Dr. Burgert's opinion and came to the conclusions noted above. The ALJ then separately evaluated Dr. Farley's opinion and listed specific reasons for giving it great weight, because it was "generally consistent with the medical evidence of record, which showed that the claimant's physical examinations were generally unremarkable." (Tr. at 29.) Substantial evidence supports this determination.